## HINESLEY ET AL. v. CRUM ET AL.

[No. 21,581. Filed December 14, 1910.]

1. DRAINS.—*Remonstrances.*—*Evidence.* — *Watercourses.* — *Easements.*—In a drainage proceeding, the remonstrators' contentions that the proposed drain was located on the line of a natural watercourse, and that they had an easement for the drainage of their lands over the lands of the petitioners, constitute questions of fact for the trial court, and a general finding for the petitioners precludes the Supreme Court from determining either contention in favor of the remonstrants. p. 13.

2.  DRAINS.—*Benefits.*—*Elements.*—The lands of remonstrators in a drainage case may be assessed for benefits, though a natural watercourse existed for their lands, or an easement had been acquired for their drainage, since in estimating such benefits indirect and collateral benefits may be considered, as well as future possibilities.  p. 14.

3.  DRAINS.—*Benefits.*—*Weighing Evidence.*—Whether the lands of remonstrants in a drainage case would be benefited by the construction of the proposed drain, and, if benefited, the amount thereof, are questions of fact, and the trial court's decision thereon, based upon conflicting evidence, is conclusive upon appeal.  p. 14.

4.  DRAINS.—*Failure to Clean.*—*Insufficiency.*—*New Drain.*—It is no defense to the establishment of a new drain to show that there is an existing, uncleaned, public drain, unless it is further shown that the existing drain, if cleaned, would be sufficient to carry off the water.  p. 15.

5.  DRAINS.—*Failure to Clean.*—*Excuses.*—The failure of the lower proprietors along a public drain to clean their allotments will excuse an upper proprietor from cleaning his.  p. 15.

6.  DRAINS.—*Improper Assessment of Benefits.*—Improper assessment of the benefits to the lands of drainage remonstrators by the drainage commissioners, is harmless, and does not furnish a ground for the reversal of the judgment of the circuit court, where such court, upon conflicting evidence, determined the amount properly assessable against such lands.  p. 15.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Drainage petition by Silas W. Crum and another, against which Daniel Hinesley and others remonstrate. From a judgment for petitioners, remonstrants appeal. *Affirmed.*

*Joseph Claybaugh* and *Guenther & Clark,* for appellants.
*Thomas M. Ryan* and *James V. Kent,* for appellees.

MONKS, J.—This proceeding was brought by appellees in the court below, under section nineteen of the drainage law of 1907 (Acts 1907 p. 501, §6174 Burns 1908), for the purpose of changing, improving and extending a certain drain already established, by tiling and covering the existing drain, and changing the line thereof wherever it might be necessary to make an effective drain, etc.

It appears from the record that there has been a public

drain established and constructed, commencing on what is known as the "Stoms land," and extending thence in a northwesterly direction a distance of two miles, or over, to Middlefork creek. The first proceeding was commenced by appellant Hinesley in 1873, in which a part of said drain was established and constructed. In 1877 he brought another proceeding, whereby the drain of 1873 was extended south on the Stoms land, and was continued a few feet farther north. In 1883 a drain was established and constructed along the line of said ditch constructed in 1877, commencing at the south side of the Stoms land and extending to a highway running east and west, known as the Middlefork gravel road. At a later date a public drain was established, commencing at said gravel road at the end of the drain of 1883, and extending in a northwesterly direction to said Middlefork creek. In 1886 appellant Hinesley, on that part of his land adjoining the Stoms land on the north, together with the owners of the land above him, placed tile in the bottom of said drain, and made a blind or closed drain of it. A short time afterwards the tile was extended north, then west across a north-and-south highway to a point on the land of one Bosworth.

By this proceeding it is proposed to tile and otherwise improve said public drain, commencing at the end of the tiling on the Bosworth land and extending thence down said drain 7,300 feet, and also to tile a branch or lateral drain for about 1,300 feet. The petition was referred to the drainage commissioners. Afterwards the drainage commissioners filed their report, which was in favor of said improvement.

Appellant Hinesley filed his separate remonstrance against said report and against each of the assessments of benefits against each of his tracts of land. Appellants other than Hinesley also filed separate remonstrances against each assessment of benefits against each tract of land. To these remonstrances appellees filed a general denial.

A trial by the court resulted in a finding against each

appellant on each ground of remonstrance. Appellant Hinesley filed a separate motion for a new trial. Appellants other than Hinesley also filed separate motions for a new trial. These motions were overruled, and judgment was rendered approving and confirming the assessments of benefits against each appellant, and establishing the proposed work. The only errors assigned call in question the action of the court in overruling said motions for a new trial.

The following causes for a new trial are assigned in each motion, and are urged as grounds for reversal: "(1) The finding of the court is not sustained by sufficient evidence, and (2) the finding of the court is contrary to law."

Appellants contend, under said causes for a new trial, that the evidence shows that said drain, from its commencement on the Stoms land to the point where it empties into Middlefork creek, was a natural watercourse before it was improved under the drainage laws of the State, and that, " being a natural watercourse, they have the right to drain their lands into and through it onto the lands of the petitioners and others, that such lands are charged with the burden of the water so cast upon them through said natural watercourse, that the servient owners are bound to take care of the water so cast upon them, and that therefore their lands are not benefited by such improvement and cannot be assessed therefor."

Said appellants further claim, under said causes for a new trial, that the evidence shows that " they have for more than twenty years before this proceeding was commenced, and during all of said time, thrown the water from their lands through open and tile drains into said drain over and across the lands of the petitioners, and thereby have acquired and gained such right by prescription, and therefore their lands are not subject to any assessment of benefits for the making of said improvement."

Whether said drain which was constructed under said drainage proceedings was or was not on the line of a natural

watercourse and an improvement thereof, and whether appellants had an easement for the drainage of their lands on and over the lands of the petitioners and others, as claimed by appellants, were questions of fact to be determined by the court on the trial of the case; and for aught that appears from the record, the trial court found both of these questions against the contentions of appellants. We cannot say from the evidence, as against the finding of the court against appellants, either that there was a natural watercourse (*New Jersey, etc., R. Co.* v. *Tutt* [1907], 168 Ind. 205, 211, 212), or that appellants had such an easement (*Conner* v. *Woodfill* [1890], 126 Ind. 85, 22 Am. St. 568; *Clay* v. *Pittsburgh, etc., R. Co.* [1905], 164 Ind. 439, 445, 446) by prescription as claimed by them.

If a natural watercourse existed, as claimed by appellants, or if each of them has an easement to drain his lands across the lands of the petitioners as claimed, it does not

2. follow as a matter of law that their lands are not benefited by, and cannot be assessed for, the improvement petitioned for in this case. It is not necessary that the benefits be direct and immediate to justify an assessment. Not only may collateral or indirect benefits be considered, but future possibilities, if any, may also be considered. *Soady* v. *Wilson* (1835), 3 Ad. & El. 248, 263, 264, 4 Nev. & M. 777, 1 H. & W. 256, 30 Eng. Com. Law 130, 136, 137. This court pointed out in the case of *Culbertson* v. *Knight* (1899), 152 Ind. 121, some of the things that may be considered in determining what lands are benefited and the amount thereof. See, also, *Oliver* v. *Monona County* (1902), 117 Iowa 43, 55, 56, 90 N. W. 510.

Whether the lands of appellants would be benefited by said improvement, and the amount of such benefits, were questions of fact first passed upon by the drainage

3. commissioners, and afterwards by the court on the trial of the remonstrances of appellants, and as there

was evidence to sustain said findings of the court, we cannot, under the well-settled rule, disturb such findings.

Appellants also complain that appellee Crum has failed to clean his allotment of the open ditch as it now exists, and that under the guise of a new work he cannot compel 4. others to contribute to the expense of removing such obstruction, when the existing ditch, if properly cleaned and repaired, would effectually drain his lands and dispense with the necessity of the proposed improvement, citing *Beery* v. *Driver* (1906), 167 Ind. 127, 132. But this case does not apply, because it nowhere appears that said 5. drain, even if cleaned, would be sufficient. Indeed, the evidence would warrant a finding to the contrary. Moreover, it appears that the lower owners have failed to clean their allotments. This excuses appellee Crum. §6161 Burns 1908, Acts 1907 p. 600, §2.

Appellants contend that as the drainage commissioners first determined the cost of the proposed drain, and apportioned it to the lands they believed would be affected 6. thereby, regardless of the benefits sustained by said lands, the judgment of the court below must be reversed. This, if true, furnished no ground for the reversal of the judgment. But if it did, the evidence does not show that the drainage commissioners assessed the lands regardless of benefits.

Mr. Sharp, one of the drainage commissioners, testified, on cross-examination, that the drainage commissioners first determined what it would cost to construct the drain, and then assessed the lands drained a sufficient amount to cover the cost. The same witness testified, however, that, in his judgment, the construction of the drain would increase the market value of the lands assessed the amount of the assessment.

Other witnesses testified that appellants' real estate would be benefited by the improvement to the amount of the assessment, and the lower court, by affirming the report of

the commissioners, as modified, and entering judgment in favor of the petitioners, found that said lands would be benefited to the amount of the various assessments. This being true, the irregularity, if any, committed by the drainage commissioners, in ascertaining the cost of said improvement before levying the benefits, is not cause for reversal.

Finding no available error, the judgment is affirmed.