## SHARP ET AL. *v.* EATON ET AL.

[No. 21,660. Filed April 18, 1911.]

1. DRAINS.—*Benefits.*—*Assessments.*—*Lands already Drained.*—The fact that lands lying within the area of a proposed drain are already sufficiently drained does not, as a matter of law, require the conclusion that they would not be benefited by the proposed drain. p. 446.

2. DRAINS.—*Duplication of.*—*Benefits.*—*Lands already Drained.*—*Evidence.*—Evidence that lateral artificial tile drains laid through

remonstrators' lands and carrying the water into an existing drain caused such existing drain to overflow and the water to back and escape through the joints of the tiling, thereby escaping upon and overflowing petitioner's lands, shows a sufficient benefit to remonstrators' lands to sustain a special assessment for the construction of another and parallel drain to carry off such excess water. p. 446.

3. DRAINS.—*Duplication.*—*Benefits.*—The assessment of remonstrators' lands for the construction of a drain, sufficient to drain their lands, does not prevent a reassessment for the construction of another drain, where the second one is necessary for the drainage of the area including remonstrators' lands, the drainage of overflowed lands being of public concern, as well as for the benefit of individuals. p. 446.

4. DRAINS.—*Ancillary.*—*Petitions.*—*Reports.*—*Variance.*—Where a petition was filed for the establishment of a drain, and the decision of the court was for the establishment thereof as an aid to an existing drain, no variance between the pleading and the proof is shown, the petition, together with the report of the commissioners, showing the location and character of such drain constituting the complaint. p. 447.

5. DRAINS.—*Supplementary.*—A supplementary or relief drain may be established to carry off surplus water not carried off by an existing drain; and it may be constructed along such original drain, or partly in its channel; and some of the lateral drains originally emptying into the existing drain may be changed so as to flow into the supplementary drain. p. 447.

6. DRAINS.—*Commissioners.*—*Powers.*—*Statutes.*—Under the drainage act of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1908), providing among other things that the act shall be liberally construed and that the drainage commissioners shall locate the line of the drain so as to secure the best results, and that in so doing they may use an existing drain or construct a new drain, the court has power to order the construction of a supplementary drain in aid of an existing one. p. 448.

7. DRAINS.—*Assessments.*—*Evidence.*—In a proceeding to establish a drain it is not erroneous to exclude answers to questions calling for the present reasonable value of the entire drainage area, and for such value after the establishment of the proposed drain, the questions being too broad and covering lands owned by persons who were making no objections to such drain, the proper question being as to the value of the land of each remonstrator before and after the establishment of the drain. p. 448.

8. EVIDENCE.—*Opinions.*—*Harmless Error.*—*Drains.*—The improper admission of opinion evidence in a drainage case does not neces-

sarily constitute reversible error, especially where the case was tried by the judge, where such evidence was introduced on behalf of both parties, and where the facts sought to be shown thereby were shown by other evidence. p. 449.

From Carroll Circuit Court; *C. W. Hanley*, Special Judge.

Drainage petition by George E. Eaton and others, against which Nelson B. Sharp and others remonstrate. From a judgment for petitioners, remonstrants appeal. *Affirmed.*

*Boyd & Julien* and *Russell K. Bedgood*, for appellants.
*John H. Cartwright* and *James O. Obear*, for appellees.

Cox, J.—This is a proceeding to establish a ditch, lying wholly within the county, begun before the Board of Commissioners of the County.of Carroll, under the provisions of the act of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1908), in which appellees were petitioners and appellants were remonstrators. The board rendered a final judgment establishing the ditch, from which an appeal was taken to the circuit court, where a trial was had again resulting in a final judgment in favor of the petitioners.

The single assignment of error in this court, relied on for reversal, alleges error on the part of the trial court in overruling the joint and several motions of appellants for a new trial, and under this, appellants present for decision questions on rulings of the trial court in the admission and exclusion of certain evidence, and contend that the evidence, for reasons to be considered hereafter, does not sustain the court's finding.

The location for the proposed drain, the record shows, is in a basin inclosed by watersheds to the north, east and south, the natural outlet of the basin being in a direction a little south of west. Part of the land within these watersheds is low and with marshy depressions. Other lands slope with a considerable grade upward to the summit of the watersheds, and naturally cast their surface-waters onto the lower lands in the center of the basin, and this is especially true of the lands lying south.

There existed in this basin, when this proceeding was instituted, a public drain, the upper part tiled and the lower part open, which followed the base of the basin westwardly along the way of the natural outlet for the waters collecting therein. Into both the open and the tiled parts of this drain, many lateral tile drains entered from the north, east and south. These lateral drains, and more particularly those from the south, because of the more abrupt downward slope of the lands through which they were laid, had a much greater fall than the main ditch. This existing drain, known as the Weida ditch, while adequate for the drainage of the higher lands sloping downward from the crest of the watersheds on the south and the north, is—it is not seriously controverted—insufficient properly to drain those lands with their marshy depressions lying in the lower part of the basin. The lands lying within the basin thus defined by the watersheds were assessed for the construction of the Weida ditch, and among these were the lands of both appellants and appellees.

Some of the lateral drains connected with the Weida ditch existed before the construction of the latter, and were constructed for the quicker and more effective drainage and disposal of the surface-waters of the higher-lying lands to the north and the south. These drains manifestly had the effect of quickly casting the water from the lands drained by them onto the lower lands lying in the bottom of the basin. For the purpose of effectively draining the entire basin inclosed in the watersheds described, the Weida ditch was projected, and these lateral drains were connected with it. As before stated, the contemplated purpose of providing drainage for all the land of the district there defined was not attained.

Appellees, being sufferers from the inadequacy of the Weida ditch, in their petition ask for the construction of a tile-drain substantially parallel with and a little south of the existing drain, discharging into the open part of it near where the tiled

part of the Weida ditch empties into the open part, and that "inlets, catch-basins, silt-wells, tributaries, branch drains and relief drains should be constructed as appurtenances to the proposed drain, wherever they may be necessary, so that said drain, when constructed, will completely and effectually drain all the lands benefited thereby."

The drainage commissioners reported that the drainage contemplated was practicable, and would be of public utility; that when accomplished it would improve the public health and benefit highways of the county, and that the costs and expenses of effecting the drainage would be less than the benefits to the owners of the lands affected thereby. They further reported that the best and cheapest method of drainage would be by the construction of a tile-drain substantially along the route as described in the petition, and from the end of that, by the construction of an open drain in the channel and along the course of the open part of the Weida ditch, being a deepening, widening and straightening thereof. Their report and plans provided for the interception of the tile laterals from the south then connected with and emptying into the tile of the Weida ditch, and connecting them with the tile part of the proposed drain. The lands proposed to be assessed for the construction of this drain are practically the same as those bearing the burden of the construction of the Weida ditch.

The appellants severally remonstrated against the report of the drainage commissioners, on the grounds that their lands would not be benefited by the proposed work; that it was not practicable to accomplish the proposed drainage without an expense exceeding the aggregate benefits; that the proposed work would not improve the public health, benefit any public highway of the county, nor be of public utility; that the proposed work, as decided upon and reported by the drainage commissioners, would not benefit, in any particular, the lands of the remonstrators, and would not be sufficient properly to drain any of the lands reported as affected by the proposed drain.

It is contended by appellants that the evidence not only does not show the necessity of additional drainage for their lands, but that it does show that the proposed work 1. will not afford them additional drainage facilities, and that therefore there is no evidence to warrant the assessment of special benefits to them. The fact that the lands of appellants were sufficiently drained under the existing conditions does not require the conclusion, as a matter of law, that they would not be so benefited as to justify assessments to aid in the construction of the drain.

2. The evidence fairly establishes the fact that the lateral artificial drains through which appellants drained their lands overloaded the existing Weida ditch, and not only caused it to hold back the waters collecting in the low lands, but that some of these lateral drains, after filling the Weida tile, caused the waters collected to escape upward through the joints of the tiles of both that drain and the lateral ones, to the surface of the ground, where it found its way to the lands of some of the appellees. To provide an adequate outlet for these lateral artificial drains, so that the waters collected by them would not burden the lower lands, was a sufficient benefit to sustain a special assessment. The evidence is sufficient to justify the court's finding, that the proposed work in connection with the Weida ditch will do this. The evidence shows that appellants received this and other special benefits. The well-considered cases of *Lipes* v. *Hand* (1886), 104 Ind. 503, 507, 508, 512, *Culbertson* v. *Knight* (1899), 152 Ind. 121, and *Hinesley* v. *Crum* (1910), *ante*, 10, are clearly and instructively in point.

The contention of appellants, that because they had been before assessed for drainage work in the attempt to give the basin inclosed within the watersheds named adequate 3. drainage as an entirety, and that this prior work had given them complete drainage facilities, they cannot again be compelled to contribute to the common enterprise, is inequitable and is not sustained by the authorities. The

drainage of wet and overflowed lands is a matter of public concern, as well as a matter of benefit to individuals, and the power to drain any particular district is not exhausted by one effort. It has been held repeatedly that a drain may be established over the line of an existing one, and assessments made a second time if benefits accrue. *Meranda* v. *Spurlin* (1885), 100 Ind. 380, 383; *Drebert* v. *Trier* (1886), 106 Ind. 510, 511; *Sample* v. *Carroll* (1892), 132 Ind. 496, 498; *Denton* v. *Thompson* (1894), 136 Ind. 446, 459; *Rogers* v. *Venis* (1897), 137 Ind. 221; *Beery* v. *Driver* (1906), 167 Ind. 127.

Appellants contend that the petition of appellees was for an independent drain, and that as the decision of the court, following the evidence given, established the drain as 4. an aid to and relief of the Weida ditch it was contrary to law. In other words, that the evidence and the decision do not accord with the theory of the petition. They insist, also, that there is no authority of law for establishing such a relief drain. These contentions cannot be upheld. The petition, together with the report of the commissioners, makes the complaint of the petitioners in a proceeding of this kind (*Trittipo* v. *Beaver* [1900], 155 Ind. 652); and it palpably appears from these that the purpose was to drain the district by adding to the capacity of the existing drain.

As appears from cases before cited, a drain may be established over the line of an existing, inadequate one, if that be the cheapest and best method of accomplishing the 5. drainage of a district, and it would seem to be equally clear that a supplementary or relief drain might be constructed partly alongside and partly in the channel of an existing, inadequate drain, provided the drainage of the territory involved can thus be best accomplished. It can be no valid objection that the plan contemplates the connection with the new tile of a part of the lateral drains which overload the existing drain.

The act of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1908) is sufficiently comprehensive to justify this proceeding, and gives ample authority to accomplish the purpose sought in the manner pursued. It is provided in section eight that the act "shall be liberally construed to promote the drainage and reclamation of wet or overflowed lands." And the drainage commissioners, under the provision of section three of that act, shall "definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed work * * * including all necessary arms," and that in locating the lines of drainage they "may vary from the line described in the petition as they deem best and may fix the beginning or outlet so as to secure the best results. * * * They may determine that the method of drainage shall be by removing obstructions from a natural or artificial watercourse; or diverting such watercourse from its channel, by deepening, widening or changing the channel of such watercourse; by constructing an artificial channel, with or without arms or branches; by providing that said work may be the tiling of an already existing public open drain or tiling an already existing public open drain and constructing as a part of said work a new drain; by providing that such drain shall be open or tiled and covered, or partly opened and partly tiled and dug by shovel, dredge or otherwise; by constructing levees or dykes; or by any or all such methods combined."

Appellants also insist that the court erred in sustaining objections to the following questions propounded to one of the remonstrators while testifying as a witness for the remonstrators. Q. "Considering the entire lands covered by the assessments made for the construction of the proposed drain, you may tell the court what those lands are reasonably worth an acre at the present time." Q. "You may state to the court what the lands included in the assessment made for the construction of the proposed

drain would be worth were said drain established and constructed."

The offer was made to prove by this witness, in answer to these questions, that the lands involved—aggregating 1,868 acres—would be worth the same sum an acre without the drain as with it; and it is contended by appellants that they should have been permitted to make the proof to sustain their cause of remonstrance, that the drain would not be of public utility, and that it would not be practicable to accomplish the proposed drainage without an expense exceeding the aggregate benefits. Even if competent to permit remonstrators to contest the question of benefits to lands whose owners are content with their assessments for the purpose here shown, these questions cannot be commended. From their very broad and general character they were not such as to appeal to the conscience of the interested witness for a fair and truthful answer. But on the question, whether the cost of a proposed drain will exceed the benefits assessed, remonstrators cannot question the amount of the assessment of petitioners and other landowners who rest content, and are not contesting their assessments. It was competent on this question for appellants to show the value of the lands of each of the remonstrators with and without the proposed drain, and this they were permitted to do. *Earhart* v. *Farmers Creamery* (1897), 148 Ind. 79; *Clarkson* v. *Wood* (1907), 168 Ind. 582.

Complaint is also made of a number of rulings of the trial court in admitting certain testimony which appellants claim consists of opinions of the witnesses on the precise question for the determination of the court.

8. The questions and answers were not so objectionable as those involved in the case of *Heick* v. *Voight* (1887), 110 Ind. 279, 286, and are clearly distinguishable from those— the admission of which was held erroneous—in the case of *Yost* v. *Conroy* (1884), 92 Ind. 464. They did not involve

the ultimate issuable facts. But if it should be conceded that these questions and answers violated the opinion rule as it exists in this State, it would not follow that errors committed in admitting them would compel a reversal of the case. The trial was by the court, and as it appears from the record that both appellees and appellants were permitted with equal freedom to give opinion evidence on the questions involved, it is therefore probable that the advantages and disadvantages to each side were equal. *Lowe* v. *Ryan* (1884), 94 Ind. 454.

Moreover, from physical conditions in the drainage district, which were established without controversy, and other evidence of force and competency, the same facts which these questions and answers were intended to aid in proving were shown. The court's rulings therefore, if erroneous, cannot be said to have affected injuriously the substantial rights of appellants.

We have given consideration to all the questions presented by the record and not waived, and find no cause for reversal.

Judgment affirmed.