HUBENTHAL ET AL. *v.* CRAIN ET AL.

[No. 29,691.   Filed July 9, 1959.]

*Hillis & Hillis, John T. Hillis* and *Tom F. Hirs-chauer,* all of Logansport, for appellants.

*Hanna & Small, Frederick Hanna* and *Norman Kiesling,* all of Logansport, for appellees.

ACHOR, C. J.—This cause was initiated by a petition filed in the Cass Circuit Court for "the cleanout, alteration and repair of the Gault Drain." The Gault Ditch

was first established in the year 1907 (see *Murray* v. *Gault* (1913), 179 Ind. 658, 101 N. E. 632) as an open ditch, extending through the counties of Cass, Fulton and Pulaski.

The petition was docketed and referred to the Cass County Surveyor and viewers.

The surveyor thereupon laid out the ditch, establishing Stations "0" and "484" (at 100 foot distances). The surveyor and viewer divided the territory affected for assessment purposes into four watershed areas. Assessments were originally set up, at $1.00 per acre in area one; $2.50 in area two; $4.50 in area three; and $7.00 in area four. Some ninety-six remonstrances were filed. These remonstrances asserted among other things:

"2) The lands ... owned by the undersigned, ... are assessed too much as compared with the [other] lands hereinafter described which are assessed as benefited:
(See Exhibit Attached)

3) The lands ... the following lands hereinafter specified are assessed too low according to their benefits in comparison with the assessment of the lands of the undersigned:
(See Exhibit Attached)"

Pursuant to these remonstrances, however, work on all of area one, which was clearing of brush from Station "0" to "168" was later eliminated by the court, on suggestion of petitioners.

After hearing the court entered a judgment which modified the assessments by providing as follows:

"It is, therefore, ordered and adjudged by the Court that the assessments on the land located in Area No. 2, assessed by the viewers at $2.50 per acre, shall be reduced to $1.00 per acre. It is further ordered and adjudged that the assessments

on the land located in Area No. 3, assessed by the viewers at $4.50 per acre, shall be increased to $5.00 per acre, and that the assessments on the land located in Area No. 4, assessed by the viewers at $7.00 per acre, shall be increased to $7.50 per acre."

Thereby the court generally reaffirmed the method of determining assessments of all property owners solely according to the watershed area in which the land was located, which method was as previously employed by the surveyor and viewers.

Appellants here assert that the judgment, based upon this manner and method of establishing the assessments against appellants, was contrary to law for the reason that the statute contemplates that costs shall be apportioned to individual landowners according to their special benefits.

In this case the assessment per acre was arrived at initially by the surveyor and viewers and finally by the court by first estimating the cost of an arbitrary segment of ditch which laid within a watershed area and then dividing the number of acres in the watershed area into said estimated cost. The extent to which the particular land would or would not be benefited as compared with other land in the area was not considered in establishing the particular assessment.

For example high grounds, some one and one-half miles distant from the open ditch and containing little or no artificial drainage, were assessed by same as low muck ground which could not be adequately drained except by deepening the ditch. This method of assessment was adopted on the theory that all land in the watershed area was equally liable for the repair of the ditch, irrespective of the fact that said high grounds would receive little benefit from the project as compared with the low lands affected.

The testimony of one of the viewers regarding the method used for assessing benefits is as follows:

"Q. You assessed the outside area (the high ground) on the theory that they are liable for repair or maintenance of this ditch?

A. Right.

Q. Whether their lands will be benefited or not?

A. Right.

Q. You did not take into consideration any actual or special benefit to these lands here. You assessed them on the theory of liability?

A. On the outside area that is the thought with anybody."

Our courts have stated many criteria which are proper to be considered in assessing benefits upon a particular parcel of land. Generally, however, it has been stated:

"In determining whether lands are benefited, special benefits only may be considered, and not the general benefits which accrue to the landowner as a member of the community. Benefits are special when they increase the value of the property, relieve it from a burden, or make it especially adapted to a purpose which enhances its value.

. . . it is not necessary that the benefits be direct and immediate to justify an assessment. Future possibilities, if any, as well as collateral or indirect benefits, may be considered." 10 I. L. E., Ditches and Drains, pp. 503, 504. *Cleveland, C., C. & St. L. Ry. Co.* v. *Mumford* (1935), 208 Ind. 655, 197 N. E. 826; *Watson* v. *Armstrong* (1913), 180 Ind. 49, 102 N. E. 273; *Zigler* v. *Menges* (1889), 121 Ind. 99, 22 N. E. 273; *Lipes et al.* v. *Hand et al.* (1886), 104 Ind. 503, 1 N. E. 871, 4 N. E. 160; *Anson* v. *Thorn* (1914), 180 Ind. 695, 103 N. E. 800; *Hinesley* v. *Crum* (1910), 175 Ind. 10, 93 N. E. 274.

However, the clear mandate of our statute is that the costs of installation or repair of drains "shall be apportioned according to the benefits derived therefrom." §27-120 (e), Burns' 1948 Repl. (1957 Supp.)

In the apportionment of benefits, the viewers may not limit their consideration to the legal liability, which the law imposes generally upon the landowners of a watershed area by reason of indirect benefits which they receive from the drain, but they must also consider the fact that the owners of the higher land have a right to the natural drainage of their land and that the owners of the low lands must assume this burden different from their better situated neighbors. *Culbertson* v. *Knight* (1899), 152 Ind. 121, 52 N. E. 700. And further, that although the owners of the higher lands are chargeable for the additional burden caused by their artificial drainage, *Culbertson* v. *Knight, supra; Lipes et al.* v. *Hand et al., supra; McDaniel* v. *Beazell* (1934), 206 Ind. 168, 188 N. E. 670; *Sharp* v. *Eaton* (1911), 175 Ind. 441, 94 N. E. 753, owners of the low lands must also be charged according to the benefits which they receive from the increased artificial drainage which the ditch provides. *Watson* v. *Armstrong, supra,* 180 Ind. 49, 102 N. E. 273; *Lipes et al.* v. *Hand et al., supra; Parke County Coal Company* v. *Campbell, Surveyor of Parke County* (1894), 140 Ind. 28, 39 N. E. 149, 39 N. E. 558.

These essential factors were not considered in the schedule of assessments as originally determined by the viewers or as finally adjudicated by the court. This fact is pointed up by the testimony of appellees' own witnesses. According to the evidence most favorable for appellees, the lands of certain high lands were benefited to the extent of $10.00 to $15.00 an acre, whereas the owner of muck land

within the same watershed area testified that the proposed reconstruction and repair would increase the value of his muck land by $50.00 an acre. Any method of determination which equalized the assessments imposed upon these parcels of land is arbitrary and in direct conflict with the statute which provides that "The cost . . . shall be *apportioned* according to the benefits derived therefrom." (Our italics.)

Judgment is therefore reversed with instructions to sustain appellants' motion for new trial.

Arterburn, Bobbitt and Jackson, JJ., concur.

Landis, J., not participating.

NOTE.—Reported in 159 N. E. 2d 850.