WHITLEY, NOBLE AND ALLEN JOINT DRAINAGE BOARD, Appellant (Defendant Below),

v.

Donald TSCHANTZ, et al., Appellees (Plaintiffs Below).

No. 3-883A260.

Court of Appeals of Indiana, Third District.

April 16, 1984.

---

James R. Heuer, Gates & Gates, Columbia City, for appellant.

William M. Bloom, Bloom, Bloom & Fleck, P.C., Columbia City, for appellees.

STATON, Presiding Judge.

The Whitley, Noble, and Allen Joint Drainage Board (Board) approved a maintenance project to clear the Eel River. In order to fund the project, the Board ordered a uniform assessment upon all tracts of land within the Eel River watershed. A number of affected landowners (Objectors) sought judicial review of the order, claiming, *inter alia*, that the assessment was arbitrary and not supported by substantial evidence because it was not based upon the benefits which would accrue to each tract of land as a result of the project. The trial court agreed with Objectors, set aside the assessment schedule, and remanded the cause to the Board. The Board appeals the action of the trial court contending, essentially, that its assessment schedule was properly adopted pursuant to consideration of factors permitted under the new statutes.

Affirmed.

The Eel River is the main drainage artery of Whitley County with a watershed of approximately 194,200 acres in Whitley, Noble, and Allen Counties. Since the last time the river was dredged, about twenty-five years ago, it has become clogged with silt and debris. As a result, it no longer properly drains and adjacent farmland is damaged by yearly flooding. In order to remedy the problem, the Board approved a project to clean the river at an estimated cost of $947,000. In order to fund the project, the Board adopted an assessment schedule which provided for an assessment against all land within the watershed in the amount of $3.00 per acre for one year and $1.00 per acre for each of the following two years.

While the Board's findings and order do not state the basis for the uniform assessment, it appears from the record that it was adopted on the theory that because every acre of land which drains into the

river contributes to the drainage problem, all must equally pay for the maintenance of the river. The trial court found this uniform assessment unlawful, citing *Hubenthal v. Crain* (1959), 239 Ind. 646, 159 N.E.2d 850, which held that merely being a landowner with surface drainage is not sufficient to support a uniform per acre assessment. The Board points out that *Hubenthal* was decided prior to the enactment of the 1965 Drainage Code, and contends that its precedential value was erased by the new code. On the other hand, Objectors assert, and we agree, that *Hubenthal* is still authoritative because the current drainage statutes retain the prior law's requirement that assessments be based upon benefits accruing from the maintenance.

The statutes at issue are IC 36-9-27-39 and IC 36-9-27-112. IC 36-9-27-39 provides:

"36-9-27-39 Periodic maintenance of drains; schedule of assessments

Sec. 39. When the board receives a maintenance report under section 38 of this chapter, it shall prepare a schedule of assessments that includes the following items:

(1) A description of each tract of land determined to be benefited, and the name and address of the owner, as listed on the county surveyor's report.

(2) The percentage of the estimated cost of periodically maintaining the drain to be assessed against each tract of land. The percentage shall be based upon the benefit accruing to each tract of land from the maintenance, and must be at least one hundred percent (100%) and as near to one hundred percent (100%) as is practicable.

(3) The amount annually assessed against each tract of land for maintenance.

The board may consider the factors listed in section 112 of this chapter in preparing the schedule."

(West's A.I.C.) IC 36-9-27-112 provides:

"36-9-27-112 Determination of benefits and damages by board; factors considered

Sec. 112. (a) In determining benefits to land under sections 39, 50, and 62 of this chapter, the board may consider:

(1) the watershed affected by the drain to be constructed, reconstructed, or maintained;

(2) the number of acres in each tract;

(3) the total volume of water draining into or through the drain to be constructed, reconstructed, or maintained, and the amount of water contributed by each land owner;

(4) the land use;

(5) the increased value accruing to each tract of land from the construction, reconstruction, or maintenance;

(6) whether the various tracts are adjacent, upland, upstream, or downstream in relation to the main trunk of the drain;

(7) elimination or reduction of damage from floods;

(8) the soil type; and

(9) any other factors affecting the construction, reconstruction, or maintenance.

(b) In determining benefits or damages to land under sections 39, 50, and 62 of this chapter, the board may examine aerial photographs and topographical or other maps, and may adjourn the hearing to the site of the construction, reconstruction, or maintenance in order to personally view the affected land.

(c) In determining percentages of benefit under sections 39, 50, and 62 of this chapter, the board may consider the percentage of the total cost that was assessed to each tract "in the initial construction or in any reconstruction of the drain. However, that percentage is not binding on the board in its current determination, and the board may vary from it as justice requires."

(West's A.I.C.) Prior to the adoption of the 1965 Drainage Code, the relevant statutory provision read:

"[T]he cost of such repairs, or the installation, construction and maintenance of

control dams therein shall be apportioned according to the benefits derived therefrom[.]"

IC § 27–120(e) (Burns Code Ed., 1960 Supp.).

When construing a statute, this Court must determine and give effect to the intent of the legislature. *Thompson v. Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657; *Indiana State Board of Tax Commissioners v. Ropp* (1983), —— Ind.App. ——, 446 N.E.2d 20. The prior statute provided the costs of the repairs "shall be apportioned according to the benefits derived therefrom." The import of this language is identical to that of the present statute which provides that assessments "shall be based upon the benefit accruing to each tract of land from the maintenance[.]" It simply does not appear that the legislature intended to change the basis upon which these assessments must be apportioned.

The Board argues that the legislature, through IC 36–9–27–112 granted its wide discretion in determining assessments and that a uniform assessment is within that discretion. However, many of the factors outlined in IC 36–9–27–112(a) are factors which are found in prior case law. *See Hubenthal, supra,* and cases cited therein (proper considerations include: indirect benefits received by all owners of land within the watershed; increased value of land affected; the right of owners of high ground to natural drainage; and, the burden caused by artificial drainage of high ground). It is clear that IC 36–9–27–112(a) was adopted by the legislature to provide guidance for determining the benefits which accrue to various tracts of land within a watershed. That section neither abates the requirement of IC 36–9–27–39 that the assessments be based upon the benefits derived from the maintenance project nor reflects an intention to overturn prior common law interpreting that requirement. In this case, just as in *Hubenthal,* the Board improperly limited its consideration to the indirect benefits of the maintenance which accrue to all landowners within a watershed. The trial court's determination that the uniform assessment schedule adopted by the Board was arbitrary and not supported by substantial evidence was proper.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.