**Eura F. MITCHELL, Appellant–Defendant,**

v.

**Pamela D. MITCHELL, Appellee–Plaintiff.**

No. 45A03–9606–CV–205.

Court of Appeals of Indiana.

June 23, 1997.

Joseph S. Reid, Griffith, for Appellant–Defendant.

Eugene M. Feingold, Steven P. Kennedy, Munster, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

Eura Mitchell ("Flossie")[1] appeals the trial court's award of $35,000.00 to her stepdaughter Pamela Mitchell ("Pam"), claiming that the damage award was clearly erroneous, that the trial court erred by awarding Pam attorney's fees, and various errors in the admission of evidence.

We affirm in part and reverse in part.

## FACTS

This appeal arises over a long-standing and often bitter dispute between Flossie and Pam over pictures, home movies, and personal effects of Lester Mitchell ("Lester"). Pam is Lester's daughter from his first marriage and Flossie was Lester's second wife. The dispute between the two women began when Lester died in 1987 and Flossie was named administratrix of Lester's estate. During the pendency of the estate administration, Pam filed petitions and objections to Flossie's handling of the estate. Pam and Flossie also clashed over pictures and memorabilia that Pam attempted, unsuccessfully, to retrieve from Flossie. Finally on February 1, 1991, Pam and Flossie executed an agreement to settle their differences and close the estate. The agreement required Flossie to allow Pam to copy specific photographs and stated that though Flossie did not know if any of the requested items existed, she would turn over for reproduction any photographs, movies, or videos she discovered. It also stated that Flossie would attempt to reproduce a list of people who sent flowers to Lester's funeral, and give Pam a leather wallet and a mold of Lester's face if they were found. On June 28, 1993, after repeated attempts to force Flossie to produce the requested items, Pam filed suit against Flossie for specific performance of the contract.

After filing suit, Pam sought to depose Flossie, but was met with stiff resistance from Flossie. Finally, on April 7, 1994, Flossie was deposed. At this deposition, Flossie produced several of the photographs called for in the agreement and stated that she had found other photographs and videos of Lester which she would allow Pam to copy. Flossie did not explain why she had not found and/or produced these items earlier, and continued to claim that she could not recreate the list of floral donors Pam requested. However, Flossie did state that a Book of Remembrance from Lester's funeral

1. Eura is referred to as "Flossie" by her counsel and we will use this preferred name.

existed. The Book of Remembrance, when later given to Pam, contained a list, written in Flossie's handwriting, of over 100 people who sent flowers to Lester's funeral.

A bench trial was held on March 4 and 5, 1996. Pam testified that the items she sought were tremendously important to her and were of immense sentimental value. When questioned as to the value of the items to her and the amount of damages caused by Flossie's withholding the items, Pam expressed difficulty in placing a dollar figure on items with little market value, but great sentimental value. She eventually testified, over the repeated objections of Flossie, that her damages were between $35,000.00 and $50,-000.00 for her time, travel, and expense in trying to retrieve the items. Later, Pam also testified that the value to her of the items she had yet to receive was between $77,-000.00 and $100,000.00.

During the trial, Pam sought to introduce the deposition of Betty Jernigan, a friend of Flossie's. In the deposition, Betty testified that Flossie repeatedly told her in 1981 that she (Flossie) would "get Pam" when Lester died. When introducing this deposition, Pam's attorney asked the trial judge if he wanted the deposition read from the witness stand or whether the judge would prefer to read it on his own. The judge responded that he would rather read it on his own. Flossie did not object to this procedure. The deposition was not, however, formally admitted into evidence by the trial court.

On March 21, 1996, the trial court entered its specific findings of fact and conclusions of law as requested by Pam under IND. TRIAL RULE 52(A). In its order, the trial court detailed Pam's attempts to obtain the items called for in the agreement and Flossie's failure to fulfill her obligations under the agreement. The trial court also found that Flossie acted willfully, intentionally, and in bad faith in failing to provide the requested items and that Flossie's behavior was obdurate. Flossie was ordered to comply with the agreement, produce the requested items, and pay Pam $35,000.00 as damages for the wilful three year delay in complying with the agreement. In addition, the trial court ordered Flossie to pay Pam's attorney's fees in the amount of $14,457.50 due to Flossie's obdurate behavior. Flossie appeals this decision.

## ISSUES

Flossie presents six issues on appeal which we consolidate and restate as:

I. Whether the trial court erred in considering the deposition of Betty Jernigan.

II. Whether the trial court erred by allowing Pam to give an opinion about her damages.

III. Whether the trial court's award of $35,000.00 in damages was clearly erroneous.

IV. Whether the trial court erred in awarding Pam attorney's fees due to Flossie's obdurate behavior.

V. Whether the trial court erred by substituting its own language for that of the agreement between Pam and Flossie.

## DISCUSSION

 We initially must discuss the standard of review. Because Pam requested specific findings of fact and conclusions of law under T.R. 52(A), we cannot affirm the judgment on any basis, but instead must decide whether the trial court's findings support the judgment. *Summit Bank v. Quake,* 631 N.E.2d 13, 15 (Ind.Ct.App.1994). In our review, we first determine whether the evidence supports the findings, and then decide whether the findings support the judgment. *Id.* We will reverse the judgment only if it is clearly erroneous. *Id.*

> Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inference from the evidence to support them. [Citation omitted]. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility.

*Id.* With this standard in mind, we now turn to Flossie's claims.

## I. Deposition of Betty Jernigan

Flossie claims that the trial court relied on the deposition of Betty Jernigan to make its finding of obdurate behavior and thus erred by considering evidence not properly admitted. Pam argues that the deposition was for all intents and purposes admitted by the trial court and, regardless, the deposition was merely cumulative and therefore any error was harmless. We agree that the admission of the deposition was, at most, harmless error.

■■■ "Any error in the admission of evidence is harmless if the same or similar evidence is submitted without objection." *Homehealth, Inc. v. NIPSCO*, 600 N.E.2d 970, 974 (Ind.Ct.App.1992), *reh'g denied.* The trial court, in its findings of fact, does not state that it relied solely on Betty's deposition for its finding of obdurate behavior and our review of the record reveals ample evidence other than Betty's deposition to support this finding. The evidence showed that Flossie produced photographs at her deposition that Pam had sought for three years and did not explain why she had been unable to produce them. Flossie also testified at her deposition that she could not produce a list of flower donors, yet she admitted to knowing of the Book of Remembrance which contained just such a list, in *her own handwriting.* Flossie does not now, nor did she then, object to the admission of this testimony. We hold that other evidence existed to support the trial court's finding of obdurate behavior and, therefore, any error in the admission of Betty Jernigan's deposition [2] was harmless.

## II. Opinion as to Damages

In her next claim, Flossie argues that the trial court erred when it allowed Pam to give her opinion about her damages because such testimony was irrelevant and prejudicial.[3] Pam counters that because damages were in

dispute and, in this case, difficult to value, her testimony was extremely relevant. Furthermore, Pam argues, testimony as to damages is inherently prejudicial, but that her testimony was not unduly prejudicial and, thus, admissible. The testimony in controversy consisted of Pam's attempt to place a dollar amount on her expense and loss caused by Flossie's delay in complying with the terms of the agreement. After much difficulty and repeated interruptions by Flossie's attorney, Pam stated that her damages, consisting of the time, expense, and emotional suffering caused over the seven years since her father died, were between $35,000.00 and $50,000.00.

■■■ "The trial court has broad discretion in ruling on the admissibility of evidence and in determining its relevance. We will disturb its ruling only upon a showing of abuse of that discretion." *Forrest v. State*, 655 N.E.2d 584, 587 (Ind.Ct.App.1995), *trans. denied.* Under Indiana Rule of Evidence 402, relevant evidence is admissible. "Evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Sturgis v. State*, 654 N.E.2d 1150, 1152 (Ind.Ct.App.1995), *trans. denied.*

■■■ A material issue at trial was the damages that Pam had suffered from the delay in producing the photographs and other memorabilia. In the present case, the valuation of the damages was especially difficult because of the sentimental value of the items and because, as Pam admits, the items had little or no market value. Because the damages consisted of the emotional loss and expense caused by Flossie's inaction, Pam was in the best position to judge the amount of her damages. We hold that the trial court did

---

2. We offer no opinion as to whether the deposition was properly admitted because we find the harmless error issue to be dispositive.

3. At trial, Flossie objected to Pam rendering an opinion as to the extent of her damages. Flossie's objection did not, however, state the reason for the objection, other than the opinion of the

plaintiff was not the proper means for determining damages. We will treat the objection as being based on relevance and prejudice because of Flossie's arguments in her brief and because later objections to the same testimony do mention relevance and the prejudicial effect of the testimony.

not abuse its discretion when it found that Pam's testimony was relevant.

■■■■ Our analysis does not stop here, however, because Flossie claims that Pam's testimony, even if relevant, was overly prejudicial and therefore was not admissible. Indiana Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." For otherwise relevant evidence to be inadmissible under INDIANA EVIDENCE RULE 403, the evidence must have an unwarranted prejudicial effect which substantially outweighs the evidence's probative value. *Butler v. State,* 647 N.E.2d 631, 634 (Ind. 1995). The burden lies on Flossie, as the opponent of the evidence, to show why this otherwise relevant evidence is inadmissible. *Mullins v. State,* 646 N.E.2d 40, 48 (Ind. 1995).

■■■■ Flossie makes only the bald assertion that Pam's testimony was prejudicial. We agree with Pam that all damage estimates are inherently prejudicial, but Flossie must show *unwarranted* prejudice that substantially outweighs the probative value of Pam's testimony. *Butler,* 647 N.E.2d at 634. Flossie has failed to show that this inherent prejudice was unwarranted and that it substantially outweighed the probative value, as was her burden. *Mullins,* 646 N.E.2d at 48. The trial court was, therefore, correct in allowing Pam to give her opinion as to her damages.

### III. Damage Award

In her third claim, Flossie argues that the damage award of $35,000.00 was clearly erroneous because it was speculative and unsupported by independent evidence of Pam's damages. In essence, Flossie claims that because the only testimony about the damages was Pam's own opinion, the damage award was unsupported by any evidence and was speculative.[4] Pam argues that *Campins*

*v. Capels,* 461 N.E.2d 712 (Ind.Ct.App.1984), controls the valuation of items with little or no market value, but with great sentimental value, and that the trial court correctly followed the valuation method set forth in that case. Flossie agrees that *Campins* controls, but argues, unpersuasively, that the trial court incorrectly applied the case.

At issue in *Campins* was the valuation of three rings wrongfully destroyed by a pawnbroker who had purchased the rings from a thief. The *Campins* court noted that the general rule of valuation for personal property was fair market value, but stated that where use of fair market value would run counter to the principle of just compensation, fair market value need not be applied. *Id.* at 720. Much like the items in dispute here, the court recognized that the sentimental value of the rings greatly outweighed the fair market value. The court stated that the best valuation method was to receive a wide range of factors including sentimental value. *Id.* at 721. Concerned with the danger of exaggerated sentimentality, the court stated that it was "referring to the feelings generated by items of almost purely sentimental value such as heirlooms [citation omitted], *family papers and photographs* [citation omitted], ...." *Id.* (emphasis added). Flossie attempts to argue that the items requested have little sentimental value, but it is clear that the items in controversy are just the sort of sentimental items discussed in *Campins.*

■■■■ Regardless of the sentimentality of the items, Flossie argues that Pam has failed to establish with certainty the amount of her loss. The *Campins* court stated that "in establishing proof of loss, the complainant is less compelled to provide certainty in the *amount* of loss as he is to provide certainty in the actual *fact* of loss." *Id.* at 722 (emphasis in original). "In addition, no mathematical exactitude is required in assessing damages, and all uncertainties are resolved in favor of the complainant and against the wrongdoer." *Id.* There was ample evidence

---

4. Flossie also claims, without citation, that the award was the result of passion and prejudice, and that the trial court misheard Pam's testimo- ny. Because we believe these unsupported contentions fall within Flossie's clearly erroneous claim, we will not treat them separately.

before the trial court to provide certainty as to the proof of loss and prove that the delay was caused by the intentional actions of Flossie. Though we recognize that placing a dollar value on items of purely sentimental value is a difficult and abstract business, we believe that *Campins* provides sufficient guidance in the determination of damages. We note that the damages awarded by the trial court were based on the lowest estimate given by Pam. Because the trial court correctly considered the factors set forth in *Campins* and its findings were supported by the evidence, we hold that the trial court's award of $35,000.00 in damages was not clearly erroneous.

## IV. Attorney's Fees

Flossie also challenges the trial court's award of attorney's fees to Pam in the amount of $14,457.50. She claims that the obdurate behavior exception to the American rule [5] does not apply to her. Pam contends that the obdurate behavior exception does apply and, alternatively, that the trial court could award attorney's fees based on its inherent equitable powers. Under our standard of review for specific findings, we may not affirm the trial court based on any theory justifiable, but instead must determine whether the trial court's stated theory was correct. *Summit Bank*, 631 N.E.2d at 15. Because the trial court based the award of attorney's fees on Flossie's obdurate behavior, we must focus on this theory.

Generally, each party is required to pay his/her own attorney's fees. *Kikkert v. Krumm*, 474 N.E.2d 503, 504–5 (Ind.1985). There are a few narrow exceptions to this rule, however, such as the obdurate behavior exception. The award of attorney's fees under this exception is "designed to reimburse a *prevailing party* who has been dragged into *baseless litigation* and thereby subjected to *great expense*." *Id.* at 505 (emphasis in original). This exception is only applicable when a party knowingly files a baseless claim or discovers that the claim is baseless and does not dismiss the suit. *Id.* Conduct will

constitute obdurate behavior if the trial court finds that it was "vexatious and oppressive in the extreme and a blatant abuse of the judicial process." *Id.* An award under this exception may only be made upon a *plaintiff's* filing of a baseless claim which amounts to obdurate behavior. *Northwest Calf Farms, Inc. v. Poirier*, 499 N.E.2d 1165, 1170 (Ind. Ct.App.1986), *trans. denied; Johnson v. Sprague*, 614 N.E.2d 585 (Ind.Ct.App.1993); *Cap Gemini America, Inc. v. Judd*, 597 N.E.2d 1272 (Ind.Ct.App.1992).

In the present case, Flossie was not the plaintiff; she was the defendant. Pam was the party who initiated the lawsuit. While Flossie's behavior led to Pam filing suit, conduct which gives rise to a cause of action is not obdurate behavior for the purposes of awarding attorney's fees. *Kikkert*, 474 N.E.2d at 505. Though we agree with the trial court that the evidence shows that Flossie acted in bad faith, Flossie's actions cannot be the basis for an award of attorney's fees in this instance because Flossie did not initiate or continue a baseless suit. The trial court's award of attorney's fees is, therefore, reversed.

## V. Agreement Language

Flossie's final claim of error is not entirely clear and appears to make two unrelated claims. In the clearest of the two claims, Flossie argues that the trial court could not order her to give certain skating rink scrapbooks to Pam because ¶ 12(e) of the agreement only states that Flossie will consider giving the scrapbooks to Pam upon Flossie's death. The exact nature of the second claim is much less clear. Flossie appears to argue that the trial court was, in essence, rewriting the agreement when it found that certain photographs, movies, a leather wallet, and a mask of Lester's face were last seen with Flossie and ordered Flossie to make these available to Pam. Flossie points to the agreement which stated that Flossie did not know if these items existed, but if she found them, she would allow Pam access to them. In essence, Flossie claims that the agree-

---

**5.** The American Rule refers to the general rule that each party to a suit pays its own litigation expenses absent statutory authority or agree-

ment. *Kikkert v. Krumm*, 474 N.E.2d 503, 504–5 (Ind.1985).

ment language was conclusive evidence that Flossie did not possess the items and, thus, the trial court's findings rewrote or ignored the language of the agreement.

We will first discuss Flossie's claim that the trial court cannot order Flossie to give the skating rink scrapbooks to Pam. Upon review of the trial court's order, it is clear that the trial court did *not* order Flossie to give the scrapbooks to Pam. This argument is therefore moot. We note that the trial court's order does require Flossie to make available for copying all pictures of Lester, so she may still be required to allow Pam to copy photographs from these scrapbooks. Flossie does not, however, challenge this part of the order, and it remains valid.

▮▮▮▮▮ In her claim that the trial court rewrote the agreement between Flossie and Pam, Flossie misconstrues the trial court's findings of fact. The trial court was merely reciting its findings, not attempting to rewrite the agreement. The evidence at trial showed that the items in controversy were last seen in the possession of Flossie and that Flossie either did not or could not explain their alleged disappearance. This evidence combined with the evidence of Flossie's habit of withholding items until compelled to produce them, led the trial court to the reasonable inference that Flossie was still in possession of the disputed items. We fail to understand how findings derived from testimony at trial can be construed as an attempt to rewrite the agreement. Flossie has claimed no cognizable error and has failed to claim any harm. We hold that the trial court's specific findings of fact were just that, findings of fact, and not an attempt to rewrite the agreement. Because the findings of fact were supported by the evidence before the trial court, the trial court's findings of fact were not clearly erroneous. *Summit Bank,* 631 N.E.2d at 15.

The award of attorney fees is reversed. In all other respects the judgment is affirmed.

SHARPNACK, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

My dissent is limited to the Majority's reversal regarding the award of attorney fees. The concept of obdurate behavior is to award attorney fees where a party has brought an action which is vexatious and oppressive in the extreme. The Majority has embraced the most common application of this concept by limiting it to a defendant who has been sued. Here, it is quite obvious that the defendant, Flossie, has caused the action to be filed by her incessant devious behavior. If the exception to the American rule, obdurate behavior, is to have any intrinsic meaning, it must be applied to the party who has actually caused the action to be filed. Here, the party entitled to attorney fees is the plaintiff.

The Majority Opinion states: "The trial court also found that Flossie acted willfully, intentionally, and in bad faith in failing to provide the requested items and that Flossie's behavior was obdurate." Op. at 1086. The Majority reversed the attorney fee award of the trial court. I would affirm the trial court and this is why:

1. After Pamela's Father's death in 1987, the estate was not closed until February 1, 1991 because of Flossie's refusal to share family pictures, videos and home movies. The closure of the estate was only effected when Flossie, a second childless spouse, entered into an agreement to let Pamela copy the sentimental items listed.

2. Almost two and a half years later, June 28, 1993, Flossie had not made any effort to deliver the items listed in the agreement. Pamela was forced by Flossie's vexatious and oppressive behavior to bring an action to enforce the agreement.

3. It took almost a year after the action was filed to obtain Flossie's deposition. As Pamela points out in her brief: "These efforts met with strenuous resistance from FLOSSIE, through her attorney, including the filing of a Motion for Sanctions against PAM's attorney, which motion was ultimately denied. [Record at pp. 106, 207]".

Appellee's Br. at p. 4. (Emphasis in original).

4. The April 7, 1994 deposition of Flossie produced many of the family picture, videos and the list in Flossie's handwriting of a hundred people that she had previously stated did not exist.

5. Too, the trial judge had before him the deposition of Betty Jernigan who stated that Flossie had told her in 1981 that she would "get Pam" when Lester died.

Admittedly, the obdurate conduct exception has always been applied to attorney fees where the plaintiff has brought an oppressive and vexatious action. *Northwest Calf Farms, Inc. v. Poirier,* 499 N.E.2d 1165, 1169–70, (Ind.Ct.App.1986), *trans. denied; Wernke v. Halas,* 600 N.E.2d 117, 123–24 (Ind.Ct.App.1992). But, it is not beyond one's imagination to conceive the plaintiff being oppressed and vexed by the defendant to a point that the plaintiff has no other alternative but to bring an action and incur considerable legal expense. Rare as this circumstance may be, the trial judge clearly saw the need to apply the sanction of obdurate behavior. I would affirm the entire judgment of the trial court.