**Eura F. MITCHELL, Appellant (Defendant below),**

v.

**Pamela D. MITCHELL, Appellee (Plaintiff below).**

**No. 45S03–9806–CV–339.**

Supreme Court of Indiana.

June 12, 1998.

Joseph S. Reid, Griffith, for Appellant.

Eugene M. Feingold, Steven P. Kennedy, Munster, for Appellee.

### ON PETITION TO TRANSFER

BOEHM, Justice.

We grant transfer to address whether an appellate court may affirm a judgment on a different legal theory from that relied on by the trial court if special findings of fact and conclusions of law were entered at a party's request pursuant to Trial Rule 52(A). We hold that it may and affirm the trial court's award of attorney's fees.

In this case, the trial court awarded $14,-457.50 in attorney's fees to plaintiff Pamela D. Mitchell ("Pamela") on the ground that the "obdurate" conduct of defendant Eura F. Mitchell ("Flossie")[1] justified a departure from the general "American rule" that parties to litigation bear their own attorney's fees. With one judge dissenting, the Court of Appeals recognized an exception to the American rule for obdurate behavior, but concluded that the obdurate behavior exception applied only to obdurate plaintiffs, not obdurate defendants. Accordingly, the fee award was reversed. *Mitchell v. Mitchell,* 685 N.E.2d 1083, 1089 (Ind.Ct.App.1997).

The Court of Appeals made no explicit mention of the statutory authorization for recovery of fees against defendants as well as plaintiffs provided for in Indiana Code § 34-1-32-1.[2] In pertinent part, that statute provides:

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

However, in apparent recognition of the statute, the majority noted the doctrine that where special findings are requested and entered under Trial Rule 52(A), the appellate court is not to affirm the trial court based on any legal theory, but rather is limited to the theory of law adopted by the trial court. *Id.* at 1086, 1089 (citing *Summit Bank v. Quake,* 631 N.E.2d 13, 15 (Ind.Ct.App.1994)). The Court of Appeals understandably invoked this rule because it (or similar or variant rules) has been cited repeatedly by the Court of Appeals, particularly in recent years. *See, e.g., Castillo-Cullather v. Pollack,* 685 N.E.2d 478, 481 (Ind.Ct.App.1997), *trans. denied; Showalter, Inc. v. Smith,* 629 N.E.2d 272, 274 (Ind.Ct.App.1994). Indeed, as one frequently-cited case for this proposition put it: "The real impact of special findings under T.R. 52(A) is that the trial judge must 'cross all the Ts and dot all the Is' for us to affirm." *Vanderburgh County Bd. of Comm'rs v. Rittenhouse,* 575 N.E.2d 663, 665 n. 1 (Ind.Ct.App.1991). The rationale for this doctrine has rarely been explained and its genesis is not entirely clear.[3] Some cases dealing with

---

1. Because the Court of Appeals referred to defendant Mitchell by her preferred name of "Flossie," *Mitchell v. Mitchell,* 685 N.E.2d 1083, 1085 n. 1 (Ind.Ct.App.1997), we do the same here.

2. This statute is soon to be renumbered due to a recent recodification of the Indiana Code. *See* 1998 Ind. Acts, P.L. 1, § 221 (repealing Indiana Code § 34-1-32-1 effective July 1, 1998); § 48

(recodifying the statute at Indiana Code § 34-52-1-1 effective July 1, 1998). This did not effect any substantive change in existing law. § 2.

3. The decisional law, while on balance favoring the rule by rote citation to early authorities, is not uniform. One antecedent appears to be *Shrum v. Dalton,* 442 N.E.2d 366, 372 (Ind.Ct.

special findings emphasize that they provide the parties and the reviewing court with the grounds on which the case was decided so that the issues are preserved for appellate review. *McGinley–Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind.1994); *Seslar v. Seslar*, 569 N.E.2d 380, 383 (Ind.Ct.App.1991).

Whatever the origins of the rule, its application here leads to the following result: (1) the facts as found by the trial court are accepted by the Court of Appeals; (2) the trial court adopted an incorrect legal theory of law, namely that the common law of this state allowed recovery of attorney's fees from an obdurate defendant; and therefore (3) the trial court's result must be reversed, notwithstanding that the statute, as explained below, provides for the result reached by the trial court on the facts as found by the trial court. As a matter of common law, the Court of Appeals correctly followed *Kikkert v. Krumm*, 474 N.E.2d 503 (Ind.1985), where this Court recognized the obdurate behavior exception but held that it did not apply to defendants. However, there is no reason why a correct rule of law applied to facts found by the trial court may not result in affirmance of the judgment even if the trial court reached the same result

through a different legal theory, particularly where the dispositive alternative theory was briefed by both parties on appeal. Because no additional factfinding is needed, the appellate court is equally well positioned to address application of the alternative theory in the first instance. Indeed, it is routine in other contexts for appellate courts to affirm judgments on theories other than those adopted by the trial court.[4]

■ Trial Rule 52(A) "is a method for formalizing the ruling of the trial court, providing more specific information for the parties, and establishing a particularized statement for examination on appeal." *Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind.1995) (holding that the Rule did not apply to small claims proceedings). These purposes are not inconsistent with affirming to reach the right result on appeal under the law applied to the facts as found. Accordingly, we hold that where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. Whether it is prudent to do so may turn on the extent to which the issue is briefed on appeal. In this case, both par-

App.1982), a case involving sua sponte findings that declared without citation that "where special findings are made, this court may not affirm the judgment of the trial court on any ground which the *evidence* supports." (Emphasis supplied.) This is a different proposition from whether an affirmance may rest on the facts as found but under a different legal theory. However, the former seems to have morphed into the latter in recent years. The *Shrum* rule was soon restated in *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55, 56 (Ind.Ct.App.1984), a case eventually cited for the rule relied on by the Court of Appeals here. *See Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665–66 (Ind.Ct.App.1991) (citing inter alia *Orkin Exterminating Co.*). Other early decisions setting forth the doctrine cited pre-Trial Rules cases, *see National Fleet Supply, Inc. v. Fairchild*, 450 N.E.2d 1015, 1019 (Ind.Ct.App.1983) (citing *Miller v. Ortman*, 235 Ind. 641, 136 N.E.2d 17 (1956)), or decisions dealing with different issues altogether. *See City of Hammond v. Conley*, 498 N.E.2d 48, 52 (Ind.Ct.App.1986) (citing *Orkin Exterminating Co.* and *In re Estate of Fanning*, 263 Ind. 414, 333 N.E.2d 80 (1975), which rejected a general judgment standard of review under the facts presented but did not clearly involve review of special findings under Trial

Rule 52), *overruled on other grounds by Osler Institute, Inc. v. Inglert*, 569 N.E.2d 636, 637 (Ind.1991) (per curiam). In contrast, at least two decisions contain some language suggesting that affirmance on any legal theory supported by the trial court's findings is permissible. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind.1992) (unclear whether findings were requested or entered sua sponte); *Data Processing Services, Inc. v. L.H. Smith Oil Corp.*, 493 N.E.2d 1272, 1274–75 (Ind.Ct.App.1986). Finally, one case involving requested special findings, without citation to authority or any apparent consideration of the *Shrum* line of decisions, applied a general judgment standard of review to the same issue presented here—an award of attorney's fees. *United Farm Bureau Mut. Ins. Co. v. Ira*, 577 N.E.2d 588, 597–98 (Ind.Ct.App.1991).

4. *Ross v. State*, 676 N.E.2d 339, 345 (Ind.1996) (admission of evidence); *Kimberlin v. DeLong*, 637 N.E.2d 121, 128 (Ind.1994) (amendment of pleadings); *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 940 (Ind.1993) (grant of summary judgment); *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572, 575 (Ind. Ct.App.1993) (dismissal of complaint); *Conway v. Evans*, 549 N.E.2d 1092, 1094–95 (Ind.Ct.App. 1990) (refusal to instruct jury).

ties expressed their views on the correct rule of law in the Court of Appeals. Under these circumstances, there is no surprise and no risk of the appellate court's introducing an unvetted legal theory. In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings.

■ Application of this doctrine to the facts found by the trial court easily results in affirmance on the attorney's fees issue. Flossie was Pamela's stepmother and the second wife of Pamela's father, Lester S. Mitchell Jr. ("Lester"), who died in 1987. After some acrimony over proper administration of the estate, Pamela and Flossie entered into an agreement in 1991 providing that Flossie, the administrator of Lester's estate, would turn over to Pamela several items of largely sentimental value. The agreement specified that Flossie was to act in a "prompt and reasonable manner" in searching for and producing several photographs, movies, and videos. Two years later, after numerous exchanges between attorneys for the parties, Pamela sued for specific performance of the agreement. The trial court found, among other things, that (1) Flossie had in her possession various items that she "willfully and intentionally" refused to submit to Pamela for reproduction until after Flossie's deposition was compelled over three years after the agreement was signed; (2) Flossie knowingly falsely represented that one item, a "funeral flower list," did not exist; (3) Flossie's failure to comply with the agreement was "willful, intentional and in bad faith"; and (4) Flossie's "obdurate" behavior forced Pamela to employ an attorney to enforce the agreement. The court awarded damages for breach of the agreement, ordered specific performance as to any remaining items still not produced, and awarded Pamela $14,457.50 in attorney's fees.[5]

■ The decision to award attorney's fees and the amount of the award are reviewed

for an abuse of discretion. *Kahn v. Cundiff,* 533 N.E.2d 164, 167 (Ind.Ct.App.1989), *adopted on trans.,* 543 N.E.2d 627, 629 (Ind. 1989) (per curiam). As noted, Pamela was not entitled to attorney's fees under Indiana common law because she initiated the lawsuit. *Kikkert,* 474 N.E.2d at 505. Nonetheless, based on the above facts, it is readily apparent that the fee award is sustainable under either Indiana Code §§ 34–1–32– 1(b)(2) or (3), *supra.* Pamela argues that Flossie's litigating in bad faith supports the award of attorney's fees under subsection (b)(3) even if the "obdurate behavior" exception would not permit it under the common law. Flossie responds that (1) the statute is not an available ground for affirmance because the issues for review are controlled by the trial court's findings; and (2) the statute provides no basis for awarding fees because Flossie has not abused the legal system and her defense was not frivolous, unreasonable, or groundless.

■ Flossie's first contention has already been addressed. The second ignores the trial court's finding of bad faith. Broadly stated, Indiana Code § 34–1–32–1 strikes a balance between respect for an attorney's duty of zealous advocacy and "the important policy of discouraging unnecessary and unwarranted litigation." *Kahn,* 533 N.E.2d at 170. Subsections (b)(1) and (b)(2) of the statute focus on the legal and factual basis of the claim or defense and the arguments supporting the claim or defense. *Id.* at 171. In contrast, subsection (b)(3)—"litigated the action in bad faith"—by its terms requires scrutiny of the motive or purpose of the nonprevailing party. More precisely,

> bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

685 N.E.2d at 1085–86.

---

5. The relevant facts are summarized in greater detail in the Court of Appeals opinion. *Mitchell,*

*Watson v. Thibodeau,* 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990) (quoting *Young v. Williamson,* 497 N.E.2d 612, 617 (Ind.Ct.App. 1986)). The findings in this case amply illustrate that Flossie acted with "furtive design or ill will" both before and after the suit was filed. Indeed, Flossie does not dispute the trial court's finding that her "failure to comply with the Agreement was … in bad faith." The trial court's finding meets the statutory legal standard that Flossie "litigated in bad faith." This is a ground for attorney's fees within the meaning of Indiana Code § 34–1–32–1(b)(3). The trial court's findings also support the conclusion of law that Flossie asserted "groundless" defenses, by denying the existence of items that she plainly either knew existed or knew she had made no bona fide effort to locate. *Cf. Kahn,* 533 N.E.2d at 171. The statute vests discretion in the trial court to award fees on finding one or more acts described in subsection (b). The trial court clearly intended to exercise its discretion to award fees. Accordingly, the trial court was within its discretion even though the statute was not relied on in awarding attorney's fees to Pamela.[6]

 This Court has observed in related contexts that the legal process "must invite, not inhibit, the presentation of new and creative argument" to enable the law to grow and evolve. *Orr v. Turco Mfg. Co.,* 512 N.E.2d 151, 153 (Ind.1987) (setting forth standard for punitive sanctions for frivolous appellate claims). To be sure, application of the statutory authorization for recovery of attorney's fees under Indiana Code § 34–1–32–1 must leave breathing room for zealous advocacy and access to the courts to vindicate rights. *Kahn,* 533 N.E.2d at 170. Courts must be sensitive to these considerations and view claims of "frivolous, unreasonable, or groundless" claims or defenses with suspicion. Rather than presenting those concerns, however, this case involves a recalcitrant defendant who made a contract to settle a dispute—presumably so that all involved could avoid ratcheting the conflict to the level of a lawsuit—and then in part through outright misrepresentation and unjustified refusal to comply with clear obligations proceeded to

refuse to honor the agreement, even after a lawsuit was brought to enforce it. The statute was designed to deter precisely this sort of needless drain on the resources of the prevailing party and the judicial system. *Cf. Klebes v. Forest Lake Corp.,* 607 N.E.2d 978, 983–84 (Ind.Ct.App.1993) (affirming award of attorney's fees under the statute against plaintiffs who refused for several months to honor an agreement they had made to settle their lawsuit).

The judgment of the trial court on the issue of attorney's fees is affirmed. The opinion of the Court of Appeals is summarily affirmed in all other respects. Ind. Appellate Rule 11(B)(3).

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

6. We do not review the amount of the award because Flossie challenges only the decision to award fees and not the computation method or the amount awarded.