**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CYNTHIA L. GARWOOD**
Lafayette, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. MOORE**
Laszynski & Moore
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE PATERNITY OF A.C.P-C, | ) |
| | ) |
| J.P., | ) |
| | ) |
|     Appellant-Respondent, | ) |
| | ) |
|         vs. | )     No. 79A02-1305-JP-423 |
| | ) |
| J.H.C., | ) |
| | ) |
|     Appellee-Petitioner. | ) |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1209-JP-2

**January 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent J.P. ("Mother") filed a notice of intent to relocate from Tippecanoe County to Ann Arbor, Michigan with A.C.P-C. (the "Child"). Appellee-Petitioner J.H.C. ("Father") objected to and filed a motion to prevent relocation of the child, which the trial court granted following an evidentiary hearing. Mother appeals. Upon review, we conclude that Mother has shown good faith and legitimate reasons for proposing the relocation, but that the trial court did not clearly err in finding that relocation was not in the Child's best interests. We also conclude that the trial court did not abuse its discretion in admitting certain documents proffered by Father into evidence. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father met on a dating website in September of 2005. They have never been married and are the biological parents of the Child. The Child was born on August 15, 2006. Shortly after the Child was born, Father initiated proceedings to establish paternity of the Child. Father has been exercising overnight parenting time with the Child since the Child was a baby.

In early 2012, Mother met Kurt Parsch on a dating website. After meeting, Mother and Parsch engaged in a romantic relationship and eventually decided to get married and move in together. Mother and Parsch initially considered the possibility of Parsch moving to Tippecanoe County, but eventually decided that Mother would move with the Child and her daughter from a prior relationship to Parsch's home in Ann Arbor, Michigan.

In light of her desire to move with the Child to Ann Arbor, Mother filed a Notice of

2

Intent to Relocate on January 28, 2013. Father objected to the relocation. On February 28, 2013, and March 6, 2013, the trial court conducted a two-day evidentiary hearing on Mother's request to relocate.

At the time of the evidentiary hearing, Father was exercising overnight visitation every Tuesday night and every other weekend. Father also exercised holiday and summer visitation pursuant to the Indiana Parenting Time Guidelines. Father was employed by Purdue University as a tenured distinguished professor, earning approximately $218,000 per year. Mother was also employed by Purdue University, earning approximately $74,000 per year.

On April 11, 2013, the trial court entered an order denying Mother's request to relocate. This appeal follows.

## DISCUSSION AND DECISION

### I. Mother's Request to Relocate

Mother contends that the trial court erred in denying her request to relocate to Ann Arbor with the Child.

### A. Standard of Review

The trial court entered findings of facts and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our standard of review is well-settled:

> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence

3

favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*M.S. v. C.S.*, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010) (quotations and citations omitted). We may affirm the trial court on any legal theory supported by the factual findings even if the trial court used a different legal theory. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998). Before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that our affirmance is consistent with all of the trial court's factual findings and inferences reasonably drawn therefrom. *Id.* at 924.

"In addition to the standard of review under Trial Rule 52, our supreme court has expressed a 'preference for granting latitude and deference to our trial judges in family law matters.'" *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our supreme court has recently re-emphasized this principle, stating that we afford such deference because of trial judges' "unique, direct interactions with the parties face-to-face." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*; *see also Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Therefore, we "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

*T.L. v. J.L.*, 950 N.E.2d 779, 783-84 (Ind. Ct. App. 2011).

## B. Denial of Mother's Request to Relocate

Pursuant to Indiana Code section 31-7-2.2-1(a), "[a] relocating individual must file a notice of the intent to move with the clerk of the court that: (1) issued the custody order or parenting time order; or (2) … has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child; and send a copy of the notice to any nonrelocating

4

individual."

> A nonrelocating parent may object to relocation in either of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child. *Baxendale*, 878 N.E.2d at 1256 n.5; *see* Ind. Code § 31-17-2.2-5(a) (regarding motion to prevent relocation). Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child. Ind. Code § 31-17-2.2-5(b). "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts" to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(d).

*T.L.*, 950 N.E.2d at 784.

In determining whether to permit a relocation, the trial court shall take into account

the following:

> (1) The distance involved in the proposed change of residence.
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time ….
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time … including consideration of the financial circumstances of the parties.
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
> (5) The reasons provided by the:
>     (A) relocating individual for seeking relocation; and
>     (B) nonrelocating parent for opposing the relocation of the child.
> (6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1. "The 'other factors affecting the best interest of the child' include,

by implication, the factors set forth for custody determinations and modifications under

Indiana Code section 31-17-2-8.[1]" *T.L.*, 950 N.E.2d at 785 (citing *Baxendale*, 878 N.E.2d at

---

[1] These factors include: (1) the age and sex of the child; (2) the wishes of the child's parent or parents;

1257).

### 1. Whether Mother's Relocation Request Was Made in Good Faith and For a Legitimate Reason

Mother claims that the trial court erroneously determined that she failed to prove that her relocation request was made in good faith and for a legitimate reason. Specifically, Mother challenges the trial court's determination that her marriage to Parsch and decision to move to Ann Arbor to live with Parsch did not present a legitimate reason for relocation of Mother and the Child from Lafayette to Ann Arbor.

As we noted in *T.L.*, our body of case law has not explicitly set forth the meaning of legitimate and good faith reasons in the relocation context. 950 N.E.2d at 787. However, we observed that "it is common in our society that people move to live near family members, for financial reasons, or to obtain or maintain employment." *Id.* at 787-88. Thus, we inferred that these and similar reasons are what the legislature intended in requiring that relocation be for "legitimate" and "good faith" reasons. *Id.* at 88. We further noted that, as the relocation statute provides and the Indiana Supreme Court has observed, the resolution of relocation disputes ultimately turns on a judicial determination of the best interests of the child, part two of the two-prong standard. *Id.* (citing *Baxendale*, 878 N.E.2d at 1256 n.5). "If part one, the requirement of a legitimate and good faith reason, posed an inordinately high bar for a

_____

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian. Ind. Code § 31-17-2-8.

relocating parent to meet, it could too often prevent trial courts from reaching part two and appropriately deciding the dispute based on the best interests of the affected child." *Id.*

In the instant matter, the trial court concluded that while Mother's decision to marry Parsch may be in good faith, Mother failed to demonstrate that the proposed relocation was made for a legitimate purpose. In making this determination, the trial court stated the following: "Among other things, [Mother] has considered the temporary two (2) year interests of her now step-daughter above the long-term interests of her son. Parsch is retired and can relocate without disruption of his employment; his fifteen (15) year old daughter can live with her mother and continue to play high school and club volley ball [sic] in Ann Arbor." Appellant's App. pp. 13-14. Without determining whether the record supports the trial court's statement regarding Mother's alleged act of putting the needs of her new step-daughter above the Child or the possibility that Mother's new step-daughter could live with her mother if Parsch were to move to Indiana, we conclude that Mother's stated reason for her request to relocate to Ann Arbor with the Child, *i.e.*, to live and create a family life with Parsch was made in good faith and for a legitimate purpose. *See In re the Paternity of X.A.S.*, 928 N.E.2d 222 (Ind. Ct. App. 2010) (providing that the father presented a good faith and legitimate reason for the proposed reason for relocation, *i.e.*, he had recently married a member of the U.S. Navy whose ship was docked in California, and he wished to relocate to California to live with his new spouse).

In sum, in light of its finding that Mother proposed relocation in order to live with Parsch, we conclude that the trial court erred in its conclusion that Mother's proposed

relocation was not for a legitimate reason. However, our inquiry does not end there because the trial court also determined that relocation was not in the Child's best interests, a determination which we now examine.

## 2. Whether Relocation Was in the Best Interests of the Child

Mother also claims that the trial court erred in determining that the requested relocation was not in the Child's best interests. We disagree. In determining that the requested relocation was not in the Child's best interests, the trial court heard evidence and made factual findings regarding the distance involved in the proposed change of residence; the significant decrease in parenting time available to Father; the unlikelihood that the close nature of the relationship between the Child and Father would be preserved if relocation were permitted; the interactions of the Child with his parents, his half-sister, and Father's long-time live-in girlfriend; and the Child's adjustment to his home, school, and the community. The trial court also considered the recommendations of the Child's Guardian Ad Litem ("GAL") and the parties' social worker regarding the Child's best interests. When reviewing a determination regarding the best interests of a child for relocation purposes, we "view the evidence in a light most favorable to the trial court's decision and defer to the trial court's weighing of the evidence." *T.L.*, 950 N.E.2d at 788-89.

### a. Distance Involved

The trial court found that Mother planned to move from Tippecanoe County to Ann Arbor, a distance of approximately 300 miles. During the evidentiary hearing, the parties presented evidence that it was an approximately four-and-a-half to five-and-a-half-hour drive

from Father's home in Tippecanoe County to where Mother would be living in Ann Arbor. In order to alleviate the burden of transporting the Child for visitation, Mother suggested that the parties meet approximately half way between their homes in Fort Wayne. The trial court properly considered this factor.

### b. Significant Decrease in Available Parenting Time and the Preservation of the Close Relationship Between the Child and Father

The record indicates that at the time of the hearing, Father was exercising 132 overnight visits with the Child per year. Should the relocation have been granted, Mother proposed a visitation schedule that would reduce Father's overnight visits with the Child by fifty-nine days, or by approximately forty-five percent. The trial court determined that the current close relationship between the Child and Father could not be preserved given such a dramatic reduction in Father's time with the child, which would be reduced from visitation on a weekly basis to one weekend per month. The trial court also heard evidence that the relocation and resulting significant reduction in the amount of time that Father could spend with the Child would be devastating for both Father and the Child.

Mother does not dispute that there would be a significant reduction in the time that the Child could physically spend with Father if she were permitted to relocate with the Child to Ann Arbor. Mother merely challenges the trial court's determination by claiming that Father and the Child could preserve their current close relationship by communicating via telephone and the internet. Mother's challenge merely amounts to an invitation to reweigh the evidence, which we will not do. *See T.L.*, 950 N.E.2d at 783.

### c. The Child's Relationships and Interactions with Family Members

It is undisputed that the Child has a close bond with both Mother and Father, and that the Child has a close bond with his half-sister, who resides with Mother, and Father's long-term live-in girlfriend. The Child appears to benefit from each of these relationships as he is a happy, well-adjusted, and thriving child. The record clearly demonstrates that both parents love the Child and have played significant roles in his care and development. It is also undisputed that neither Mother nor Father have any extended family living in the immediate area. The trial court did not err in considering this factor.

### d. Child's Adjustment to Home, School, and Community

The trial court also heard evidence that the Child was well-adjusted to both Mother's and Father's homes. In addition, the Child was enrolled and thriving in kindergarten at the time of the evidentiary hearing, and the Child had begun to participate in tee ball and soccer programs offered within the community. Mother argues that given the Child's young age, it is unlikely that he has established too strong of ties to his school or the community. Father, on the other hand, argues that the Child has made friends and even had a "girlfriend" at school. Tr. p. 296. The evidence supports the trial court's finding that the Child seemed well-adjusted to his surroundings, including his school and the community. Mother's challenge in this regard amounts to an invitation to reweigh the evidence, which again, we will not do. *See T.L.*, 950 N.E.2d at 783.

### e. Recommendation of the Court-Appointed Guardian Ad Litem

Lisa Schrader, the court-appointed GAL, met with the parties and came to an opinion about whether she believed that the proposed relocation was in the Child's best interests.

The GAL testified that although she believed it would be more traumatic for the Child to be removed from Mother's care and custody than to move to Ann Arbor, she believed that it was in the Child's best interests for the Child to continue to live in close proximity to both parents. The GAL noted that both Mother and Father are good parents who love their son.

The GAL's opinion was also supported by the testimony of Theresa Slayton, a licensed clinical social worker who was appointed to work with Mother and Father regarding communication issues. Slayton testified generally about the importance of significant contact between a father and a child. Slayton testified that research showed that substantial father-child contact promotes positive overall developmental adjustment and well-being. Slayton further testified that research shows that a sudden reduction of significant contact between a father and a child often results in a more "formalized" relationship between the father and the child and could lead to abandonment issues for the child. Tr. p. 10. Slayton also testified that in cases where one parent lives far away from the child, the child often develops a separate life from that parent. In such cases, visitation can become disruptive of the child's life because the child is often forced to choose between visiting the parent and engaging in the child's normal daily activities.

With respect to the instant matter, Slayton noted that were the requested relocation permitted, it would result in diminished involvement by Father and would likely become disruptive of and have a negative impact on the established attachment and relationship between Father and the Child. The trial court did not err in considering the testimony of the GAL or Slayton.

**f. Trial Court's Determination Regarding the Child's Best Interests**

Applying our standard of review, the issue is not whether we would have made the same decision that the trial court made, but whether the trial court's findings that are supported by the evidence are sufficient to sustain its decision. *T.L.*, 950 N.E.2d at 790. Based upon our review of the record, we must answer this question affirmatively. Mother's challenge effectively amounts for an invitation for this court to reweigh the evidence presented by the parties, an invitation which we decline. *See id.* at 789. As such, we conclude that the trial court did not err in determining that the requested relocation was not in the Child's best interests.

**II. Admission of Evidence**

Mother also contends that the trial court abused its discretion in admitting certain legal documents from the State of Virginia that were proffered by Father, relating to Parsch's prior criminal convictions and alleged history of fraudulent behavior. Specifically, Mother claims that the trial court abused its discretion in admitting an unpublished appellate court decision, an unauthenticated multi-count charging information, and numerous unauthenticated pleadings from civil lawsuits.

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

*Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007). A trial court has broad discretion in

12

ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id*. (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

> [E]rror in the admission of evidence will not warrant reversal unless a substantial right of the party is affected. Evid.R. 103(a). In a bench trial, the harm from any evidentiary error is lessened. *Moran v. State*, 604 N.E.2d 1258, 1263 (Ind. Ct. App. 1992). In bench trials, we presume that the court disregarded inadmissible evidence and rendered its decision solely on the basis of relevant and probative evidence. *Helton v. State*, 624 N.E.2d 499, 513 (Ind. Ct. App. 1993), *trans. denied*, *cert. denied*, 520 U.S. 1119, 117 S.Ct. 1252, 137 L.Ed.2d 333. Any harm from evidentiary error is lessened, if not completely annulled, when the trial is by the court sitting without a jury. *Roop v. State*, 571 N.E.2d 568, 570 (Ind. Ct. App. 1991), *trans. denied*. Also, any error in the admission of evidence which is merely cumulative of evidence properly admitted is harmless. *Wolfe v. State*, 562 N.E.2d 414, 421 (Ind. 1990); *Roop*, 571 N.E.2d at 570.

*Roser v. Silvers*, 698 N.E.2d 860, 864 (Ind. Ct. App. 1998).

In the instant matter, we need not consider whether the challenged documents constituted hearsay because the admission of the alleged hearsay was merely cumulative of other unchallenged evidence regarding Parsch's prior criminal convictions and alleged history of fraudulent behavior. During the evidentiary hearing, Parsch testified that he had previously committed criminal acts in Michigan and Virginia. His criminal acts in Virginia resulted in convictions for securities violations. Parsch also testified that he had been

involved in numerous civil lawsuits alleging fraud by Parsch. In addition, Mother testified that she was aware of Parsch's prior criminal convictions and alleged history of fraudulent behavior. Mother further testified that she was aware that there is a website dedicated to Parsch entitled "Kurt the Conman." Tr. p. 140. As the present case was tried to the bench, we conclude that, even if erroneous, the admission of the evidence in question was harmless. *See Roser*, 698 N.E.2d at 864.

## CONCLUSION

We concluded that Mother's proposed relocation of the Child to Ann Arbor was in good faith and for legitimate reasons. However, the evidence supports the trial court's conclusion that relocation was not in the Child's best interest. As a result, the trial court's denial of Mother's request to relocate the Child to Ann Arbor is not clearly erroneous. Further, the trial court did not abuse its discretion in admitting the challenged documents as the documents were cumulative of other unchallenged evidence and, accordingly, the admission of the documents could at most be considered harmless. We therefore affirm the trial court's judgment.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.